Kendall *v.* Rider.

———————•◦•———————

## KENDALL *vs.* RIDER and others.

W. K., a member of the firm of R. & W. K., mortgaged his individual property to secure a partnership debt, and under that mortgage such property was sold, and the partnership debt thereby paid. The partnership owned a part of the real estate, the *title* to which was in the two partners, as tenants in common; the partnership right growing out of the expending of partnership funds on the buildings and machinery. The real estate having been sold, and the avails (including the part belonging to the partnership) being in the hands of an assignee; *Held* that the court had no equitable jurisdiction to direct the partnership part of the fund to be paid to the individual creditors of W. K., instead of paying it to the creditors of the partnership. That, the members of the firm having assigned the partnership property, giving preferences, the partnership interest in the real estate must, with the rest of the partnership fund, follow the course of the assignment, and go into the hands of the partnership assignee; and that no part thereof could be paid to W. K.'s assignee, except as a general creditor of the firm.

THE plaintiff Kendall, (who sued for himself and other creditors,) was creditor of the copartnership firm of Rich-

Kendall *v.* Rider.

ard & William Kirk, which had been engaged in the business of manufacturing cotton wadding since about the year 1849. They owned at the beginning of the copartnership a mill and water power, in which their business was carried on. On or about the 1st of May, 1849, William Kirk, in whom the title then was, gave to Richard Kirk a conveyance of an undivided one half of the real estate, and took from him a mortgage upon the property conveyed, to secure the purchase money, $5000. In May, 1857, the Kirks failed. On the 4th of May, 1857, William Kirk, individually, made a general assignment of all his property to Jonathan B. Rider, for the benefit of his individual creditors. On the 6th of May, 1857, Richard and William Kirk, comprising the copartnership firm of R. & W. Kirk, made a general assignment to Thomas B. Rider of all their copartnership property, for the benefit of their copartnership creditors. And on the 8th of May, 1857, Richard Kirk, individually, made a general assignment to Jonathan B. Rider of all his property, for the benefit of his individual creditors. In all these various assignments, preferences were given. The plaintiff Kendall was named in the second class in the copartnership assignment, and the principal object of this suit, at the time of its commencement, was to procure a decree that the real estate upon which the wadding factory was erected was copartnership property, and that the proceeds should pass into the hands of the copartnership assignee, and be distributed among the creditors of the firm. This claim was resisted by Jonathan B. Rider, as assignee of William Kirk, for the benefit of his individual creditors, who claimed that one half of the real estate was the individual property of William Kirk, and that the proceeds should be distributed among his individual creditors named in his assignment. The cause upon this main issue came on for trial before Mr. Justice HOGEBOOM, and on the 28th of December, 1858, he made a decree declaring that the wadding factory and real estate mentioned in the pleadings were not the property of the copartnership firm of

R. & W. Kirk. That the same was purchased, and the factory thereon erected, by William Kirk, with his individual funds, and that after the conveyance of the one half to Richard Kirk, they held it as tenants in common. It was further adjudged, that if the copartnership of R. & W. Kirk loaned money or credit, or advanced funds for building the factory, they might, to the extent of such advances, be deemed creditors of William Kirk or his estate, and come in with his other creditors. It was adjudged also, that Kendall had done work to about the sum of $300, at the request of the copartnership, upon an addition built to the factory, and to the extent of the value of that addition the property must be treated as copartnership assets, and the factory and real estate must also be treated as copartnership assets to the extent of the present value of any other additions or permanent improvements made thereto by the firm of R. & W. Kirk, after they commenced business in 1849. And it was referred to Jacob I. Werner, Esq., of Albany, to take an account and report upon the matter stated in the order. On the 13th of December, 1859, the referee reported the present value of the additions and permanent improvements made to the factory and real estate by the firm of R. & W. Kirk to be $3529.79, which sum, it was claimed, should be transferred from the fund belonging to the individual creditors of William Kirk, to the fund belonging to the creditors of the copartnership of R. & W. Kirk. On the 19th of April, 1860, Mr. Justice Hogeboom made an order on the coming in of the report of the referee, adjudging the said sum of $3529.79 to be deemed copartnership assets; "but this determination is made without prejudice to any equitable rights which the individual creditors of William Kirk may have or establish therein, growing out of the mortgage of Richard to William Kirk assigned to John P. Beekman, and all further questions with respect thereto are reserved until a final hearing of this cause, with liberty to either party to make such application to the court in reference thereto as they shall be advised." On the

31st of July, 1860, the referee was directed to ascertain and report whether the individual creditors of William Kirk had any equitable rights or claims to any portion of the sum of $3529.79 mentioned in the order of April 19th, 1860, arising from or growing out of the mortgage of Richard to William Kirk, covering the Wadding factory, and which was assigned to John P. Beekman. In pursuance of this order, the referee reported, that on the 29th of December, 1856, William Kirk gave John P. Beekman a mortgage upon his farm in Chatham, for $10,000, for the purpose of saving Beekman harmless from indorsements or guaranties on notes or bills of William Kirk, or for his benefit. And that on the 10th of September, 1849, William Kirk assigned to Beekman the mortgage given by Richard to William Kirk, upon one half of the wadding factory, on the 1st of May, 1849, to secure $5000 and interest, for the purpose of securing Beekman against any liabilities he had theretofore or should thereafter incur by reason of signing, executing or indorsing any promissory note, bond or other writing for said William Kirk, or for his benefit or use, and for the purpose of fully indemnifying Beekman from all costs and expense which he should incur by reason thereof. And that from the time of said assignment and the giving of the mortgage of $10,000 in 1856, Beekman continued to hold both of said securities for various liabilities he had incurred for William Kirk and for the firm of R & W. Kirk, until judgment of foreclosure was obtained thereon and the payment of the amount secured thereby. During the year 1857, Beekman commenced proceedings for the foreclosure of both the mortgages referred to, and subsequently obtained judgments in his favor, for the amount claimed by him as having been secured by said mortgages, including the individual obligations of William Kirk and the copartnership obligation of R. & W. Kirk; and by virtue of the mortgages aforesaid and the judgment of foreclosure obtained thereon, the individual property of William Kirk was compelled to pay debts of the firm of R. & W. Kirk, to the

amount of $5767.74, for which, with interest from 1st of February, 1859, the copartnership is justly and equitably indebted to the estate of William Kirk. Upon the facts, the referee reported that the said sum of $3529.79 ought to be retained by the assignee of William Kirk, and paid over to his individual creditors. The plaintiff excepted to this report, and upon a hearing before Mr. Justice Peckham, in September, 1860, the report was confirmed, and from this order the plaintiff appealed to the general term.

*G. Van Santvoord,* for the appellant.

*John H. Reynolds,* for J. B. Rider, assignee.

*By the Court,* GOULD, J. The precise facts of this case are, that William Kirk mortgaged his individual property to secure a partnership debt; and on that mortgage his property was sold and the partnership debt thereby paid. Further, by order of this court, it has been ascertained that the partnership owned a part of the real estate, the *title* to which was in the two partners as tenants in common; this partnership right growing out of the expending of partnership funds on the buildings and machinery. The real estate having been sold, and the avails (including the part belonging to the partnership) being in the hands of an assignee, it is claimed that this court has equitable jurisdiction; and the special term order has directed the partnership part of the fund to be paid to the individual creditors of William Kirk, instead of paying it to the creditors of the partnership.

"I am unable to see the rights of the parties—either legal or equitable—in precisely this light. Had William Kirk, with his own money, paid a partnership debt, he would by that act have become a creditor of the partnership; and then, on a winding up of the partnership affairs, he would, as a creditor, have been entitled to payment. But he would not have been entitled to priority in payment over other creditors

of the firm. And I do not see how his assignee obtains any higher equity than William Kirk had. And as the members of the firm assigned the partnership property, giving preferences, it seems to me that the partnership interest in the real estate must, with the rest of the partnership fund, follow the course of that assignment, and go into the hands of the partnership assignee; and that no part thereof can be paid to William Kirk's assignee, except as a general creditor of the firm.

The order, I think, should be reversed, or so modified as to conform to this view.

Ordered accordingly.

[ALBANY GENERAL TERM, May 6, 1861. *Gould, Hogeboom* and *Peckham,* Justices.]